**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CR-26-MEF |
| | ) | (WO—Publish) |
| JAMES E. MOSS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause comes before the Court on Defendant James Moss's Motion for Judgment of Acquittal and in the Alternative Motion for a New Trial (Doc. # 160). For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART. More specifically, the motion is GRANTED as to Counts 1.B and 3 of the Indictment (Doc. # 1) and DENIED as to the remaining counts.

**II. BACKGROUND**

This case began when the Government indicted James Moss ("Moss") and four other defendants for conduct related to his ownership of Flash Tax, a tax preparation business in Montgomery, Alabama. The indictment charged Moss and his co-defendants with one count of conspiracy to defraud the United States and twenty-six counts of aiding and abetting the submission of false statements to the Internal Revenue Service

1

(IRS). After three of his five co-defendants pled guilty and agreed to testify against him, the Government tried Moss and his one remaining co-defendant, Avada Jenkins ("Jenkins").

At trial, the three co-defendants who pled guilty—Melinda Lambert ("Lambert"), Chiquita Broadnax ("Broadnax"), and Lutoyua Thompson ("Thompson")—testified against Moss and Jenkins. Melinda Lambert testified that she prepared tax returns for Flash Tax, went to training sessions conducted by James Moss, and would plug numbers provided by Moss into Flash Tax's Taxwise software. Lambert further testified that Moss held the training sessions in his living room—the employees would sip margaritas while Moss displayed tax forms on a flat screen television. According to Lambert, Moss trained them to maximize the returns customers would receive by "working the numbers out." On cross-examination, the defense elicited testimony from Lambert about her plea deal and inconsistent statements she later made to Chris Weller, an attorney hired by Moss.

Chiquita Broadnax told a story similar to Lambert's. Broadnax testified that Moss taught her how to file tax returns and, more specifically, taught her to refrain from listing more than $14,000 on the income line so as to maximize the return the customer would receive. Broadnax also testified that she prepared more than 400 returns in a single tax year—100% of which claimed an Earned Income Tax Credit and 85% of which used a Schedule C worksheet. As to the meetings between her and Chris Weller, she testified that Moss coached her to pin the blame for the fraud on Lutoyua Thompson during a

meeting at Applebee's—a meeting that occurred after Weller first interviewed Broadnax.

Lutoyua Thompson backed up both Lambert's and Broadnax's testimony. According to Thompson, James Moss told her to get customers the maximum refund possible by using the earned income line and a Schedule C form. She testified that she observed Moss come into Flash Tax and help customers inflate deductions to get the maximum refund. Thompson also claimed that Moss gave her a list of names, birth dates, and Social Security numbers and told her to use that information to fill out tax returns.

Several other former Flash Tax employees also testified that Moss trained them to file false returns.[1] Moreover, they claimed that Moss provided them with training similar to that received by Lambert, Broadnax, and Thompson. Two undercover IRS agents testified too, stating that they visited Flash Tax to have returns prepared. The way the agents described how Moss's employees sought to maximize their returns dovetailed with the former employees' testimony about how Moss trained his employees to massage the numbers to get customers the maximum refund. Finally, the Government had admitted into evidence numerous binders of documents tending to prove Moss prepared false returns and used Flash Tax bank accounts to make extravagant purchases.

For the defense, Eddie Warren testified that he worked at and later managed Flash Tax while the conspiracy allegedly operated. Contradicting the Government's witnesses, Warren stated that Moss neither taught his employees to coach customers nor did he

---

[1] The other Flash Tax employees who testified were Yunko Babies, Cynthia Hargrove, Kasanta Stewart, and Marrell Crittenden.

encourage the filing of fraudulent returns. Warren further testified that he saw Broadnax, Lambert, and Jenkins pull papers from their purse right before entering numbers into their work computers, thus suggesting the trio acted independently.

Christopher Weller, Moss's attorney, testified for the defense as well. Weller represented Moss in a dispute over a non-compete agreement in 2005. And then sometime between December 2006 and January 2007, Moss came to him after he heard about fraud occurring at Flash Tax. Weller then interviewed Lambert, Broadnax, Thompson, and Jenkins—once on January 29, 2007 and then again the next day. The three women's stories about Moss's involvement changed drastically from the first to the second meeting, Weller testified. He also stated that he helped Moss take remedial measures to clean up Flash Tax after Moss came to him about the suspected fraud occurring at Flash Tax.

At the close of trial, the jury deliberated and returned their verdict, finding Moss guilty on all counts. Moss's attorney moved for a judgment of acquittal, which the Court denied. Now, he renews his acquittal motion and tacks on a motion for a new trial as an alternate basis for vacating Moss's conviction.

## II. MOSS'S MOTION FOR JUDGMENT OF ACQUITTAL

A court must enter a judgment of acquittal after the defendant so moves if the evidence presented at trial is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). In deciding such a motion, the trial court must view the evidence in the light most

favorable to the Government and ask whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989). Put another way, a court has to draw all reasonable inferences and make all credibility choices with deference to the jury's verdict when inquiring into the reasonableness of the jury's decision. *United States v. Grigsby*, 111 F.3d 806 (11th Cir. 1997) (citing *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987)).

### A. The conspiracy count

Moss claims the Government failed to establish the elements necessary to prove a conspiracy under 18 U.S.C. § 371. To sustain a conspiracy conviction, the Government must prove three elements beyond a reasonable doubt. First, it has to prove an agreement to achieve an unlawful objective. *United States v. Cure*, 804 F.2d 625, 628 (11th Cir. 1986). Second, the Government has to show the defendant knowingly and voluntarily participated in the conspiracy. *Id.* And third, it has to prove the defendant or a member of the conspiracy committed an overt act in furtherance of the conspiracy. *Id.*

On the first element, the Government "must prove that the United States was the ultimate target of the conspiracy," which includes "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *United States v. Harmas*, 974 F.2d 1262, 1267–68 (11th Cir. 1992) (citing *Dennis v. United States*, 384 U.S. 855, 861 (1966)). The Government can prove that such a conspiracy existed by circumstantial evidence, *United States v. Silvestri*, 409 F.3d

5

1311, 1328 (11th Cir. 2005), and it need not prove a "complete detailed agreement" to achieve an unlawful purpose for a court to sustain a defendant's conviction. *See United States v. Elledge*, 723 F.2d 864, 868 (11th Cir. 1984).

Moss makes two main arguments regarding the evidence supporting his conspiracy conviction. First, he claims the Government failed to show that he conspired with his co-defendants to "engage[] in a criminal or unlawful purpose." (Doc. # 160 at 4.) Second, he asserts there was a dearth of evidence about whether he knew that his co-defendants were preparing false tax returns. (*Id.* at 5.)

These two arguments lack merit under the deferential standard that applies. Lambert, Broadnax, and Thompson testified that Moss agreed to pay them to work at Flash Tax and to prepare false tax returns. According to the three women, Moss had knowledge of the unlawful scheme, actively encouraged his employees to supply false information to the IRS, and provided training to this end. This testimony, standing alone, suffices to prove an agreement to achieve an unlawful objective, Moss's knowing participation in the conspiracy, and an overt act in furtherance of the illicit enterprise.

Other former Flash Tax employees told much the same story. For example, Yunko Babies—a former tax preparer at Flash Tax—testified that Moss told him to "play with the numbers" when someone came in and provided him with information that led to a refund below the maximum. Similarly, Cynthia Hargrove—another former Flash Tax preparer—testified that Moss trained her, taught her how to bring a customer's income

within the range that would maximize his or her return, and showed her how to game a Schedule C worksheet to get more money from the IRS. Two other former Flash Tax employees—Kasanta Stewart and Marrell Crittenden—produced testimony substantially similar to that of the three co-defendants, Babies, and Hargrove.

    Still, Moss claims that this evidence does not suffice, arguing that no one testified that he explicitly told anyone to do anything fraudulent. He also contends that, because he had managers oversee Flash Tax's day-to-day operations, he lacked the necessary knowledge about the illegal activity to sustain a conviction. Although some of the witnesses testified on cross-examination that Moss never explicitly said to file a fraudulent return, the jury had ample leeway to convict Moss. Indeed, by telling his workers to "play with the numbers," and by training them to ignore the customer's actual earnings and instead use a predetermined range meant to maximize the customer's refund, the jury could infer that Moss conspired with his employees to achieve an unlawful objective.[2] *See Silvestri*, 409 F.3d at 1328 (allowing Government to prove conspiracy with circumstantial evidence).

    As for his knowledge, Moss's use of managers to oversee Flash Tax's day-to-day operations neither negates his intent to defraud the IRS nor does it require one to infer that he lacked knowledge about what went on at his business. Otherwise, a jury could never find a defendant guilty of conspiracy so long as he employed a well-trained agent

---

[2] The jury also could have construed Moss's order to "play with the numbers" as an explicit command to prepare false returns.

to carry out his prohibited dealings. The various employees' testimony about the training they received, combined with Moss's commands to "play with the numbers," provided the jury with a basis for inferring Moss's knowledge.

Because the Court has to take the testimony at face value and weigh all evidence in favor of the verdict, *see Sellers*, 871 F.2d at 1021, a judgment of acquittal is unwarranted. The testimony of Moss's three co-defendants, plus that of Babies, Stewart, Hargrove, and Crittenden, established the necessary elements of a conspiracy. And contrary to Moss's assertions, it does not suffice that Eddie Warren's and Chris Weller's testimony tended to prove that Moss lacked knowledge about the fraudulent activity. The conflicting stories merely create a factual dispute for the jury to resolve.[3] To chose one story over the other the Court would have to find that the Government's witnesses lacked credibility—something the Court cannot do under Rule 29. Moss's motion for a judgment of acquittal on the conspiracy count is therefore denied.

## B. The substantive counts

Moss next contends that the Government failed to present sufficient evidence to support his twenty-six count conviction for aiding and abetting another in the preparation of false tax returns. To sustain such a conviction, the Government had to produce

---

[3] Moss does not dispute that his claim centers on discrepancies between the testimony of the various witnesses. (*See* Doc. # 160 at 4 ("Since there is conflicting testimony about what exactly took place at the training sessions conducted by Mr. Moss, the Government failed to prove, beyond a reasonable doubt, that Mr. Moss conspired with the co-defendants to intentionally defraud the United States Government by preparing and filing false tax returns.").)

sufficient evidence to prove the following three elements beyond a reasonable doubt: (1) that Moss willfully or knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material statements that the defendant knew were false. 26 U.S.C. § 7206(2); *United States v. Parker*, 277 Fed. App'x. 952, 957 (11th Cir. 2008). But the Government did not have to prove that Moss physically helped prepare and file the false returns. To the contrary, "[e]ach party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy," despite the defendant's non-participation or lack of knowledge about the substantive offenses. *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996) (citing *Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946)).

      The Government called a number of witnesses who testified about receiving a fraudulent tax refund because a Flash Tax employee used false information on his or her tax return. Six of these witnesses testified that Moss personally prepared a return using the information provided by the customer. Moss reasons that he could not have known about the falsity of the information provided to him because each individual customer signed his or her own form, thereby taking responsibility for its contents. He further points out how the Government's own witness, IRS tax expert Regina McMillan, admitted that a tax preparer does not violate the Internal Revenue Code by preparing a return containing false information unless the preparer had reason to know of the

information's falsity.

The Government responds by noting that "the guilt or innocence of the taxpayer for whom the return was filed is irrelevant to the question of the adviser's guilt." *United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir. 1990) (citing cases from Second, Seventh, Eighth, and Ninth Circuits for the same proposition). This Court finds that *Rowlee* states a sensible rule that the court of appeals for the circuit should, and likely would, adopt. Yet the *Rowlee* rule does not quite get the Government over the hump: it still had to prove Moss's knowledge of the material falsity. So while the taxpayer's guilt or innocence lacks relevance, the information given by the taxpayer to the tax preparer is of the utmost importance, because a tax preparer who is mislead by a taxpayer, and who acts in good faith, should not face criminal liability for reasonably relying on the taxpayer's false representations. *See United States v. Kellogg*, 955 F.2d 1244 (9th Cir. 1992) (upholding conviction for aiding and abetting preparation of false tax returns where evidence sufficient to find tax preparer lacked good faith belief in truth of information provided to him); *United States v. Sassak*, 881 F.2d 276 (6th Cir. 1989) (upholding conviction of defendant even though he acted only as "typist" because evidence showed willfulness or knowledge concerning falsity of returns he prepared).

With this in mind, Moss asserts that, in five of the six counts in which the Government charged him with personally preparing false returns, the customer signed a separate affidavit taking responsibility for the contents of the return. The affidavit stated

the customer knew what information the form contained and that it was complete and accurate. Moss contends that the affidavit, combined with the customer's signature on the tax return, absolve Moss of liability. But the evidence produced at trial, and credited by the jury, suggests otherwise.

Jerome Givhan[4] testified that he had his taxes done at Flash Tax and that his tax preparer claimed a false loss for his lawn care business on a Schedule C. According to Givhan, he did not provide the preparer with any documents. Nor does it appear that he was asked questions to verify his claimed business losses. In fact, Givhan testified that his preparer filled out the forms without Givhan having knowledge as to the deductions claimed on his behalf. According to Givhan, when the preparer finished, he told Givhan to sign the return and an accompanying affidavit, and Givhan dutifully complied, signing both documents but never reviewing either. Although Givhan said that he forgot who prepared his taxes, the preparer identification number on his tax return corresponded with James Moss's identification number, which amounts to circumstantial evidence that Moss prepared Givhan's return.

Bobby Reeves[5] told the jury a similar story about his Flash Tax experience. Reeves testified that he neither operated a business nor suffered an operating loss during the relevant tax years. His Schedule C, however, claimed that he did. Yet he never had

---

[4] Givhan's testimony corresponds with counts 1.F and 7 of the indictment.

[5] Reeves's testimony corresponds with counts 1.M and 14 of the indictment. Counts 1.L and 13 also corresond with Reeves's testimony, but those counts alleged that Jenkins acted as preparer.

any discussions with his preparer about his expenses. And like Givhan, Reeves quickly signed the documents without reading them. The Government, moreover, showed that the preparer identification number on Reeves's tax return corresponded with James Moss's.

Carlos Smith[6] similarly testified that his return had a Schedule C attached. That document listed "lawn care" as his business and claimed gross receipts of $7,420. Smith admitted to the falsity of both claims. He additionally admitted that he signed the form and documents provided by Flash Tax, but, like Givhan and Reeves, spent no time whatsoever reviewing the paperwork. His preparer processed him in about fifteen minutes and without explaining the documents. The Government, like it did with Givhan and Reeves, elicited from Smith that his tax form had Moss's identification number in the spot used to identify who prepared the return.

Felicia Boyd[7]—James Moss's ex-sister-in-law—testified that she dropped her tax information and a voided check off with Moss for him to prepare her return. Like the other taxpayers testifying for the Government, Boyd's form had James Moss's tax preparer identification number on it. Boyd's return claimed she ran a hairstyling business that incurred a loss for the relevant tax year. But at trial Boyd testified that she did not operate a hairstyling business or lose the amount of money listed as a business loss on her

---

[6] Smith's testimony corresponds with counts 1.R and 19 of the indictment.

[7] Boyd's testimony corresponds with counts 1.C and 4 of the indictment. Note that Boyd's last name was "Brazil" when the Government filed the indictment.

return. Perhaps most importantly, Boyd made clear that she dropped the form off with Moss and never saw it again: he never went over the numbers with her, never explained to her the importance of filling out the form correctly, and failed to even show the return to Boyd after he completed it.

Hillary Myrick[8] identified James Moss in open court, fingering Moss as the man who prepared her taxes. Myrick testified that, contrary to the information contained on her tax return, she did not own or operate a day care facility in 2006 nor did she spend $17,175 to that end. Further contradicting her return, she testified that she did not lose $12,375 doing a side job. According to Myrick, Moss filled out her forms and showed her where to sign—all without so much as asking questions about the Schedule C, going over the document with her, or explaining anything other than how much she would receive back from the IRS.

Looking at this testimony in the light most favorable to the verdict, the jury could have found that Moss prepared the witnesses' taxes with knowledge of the false information on each return. By filling out the Schedule Cs without asking about profits and losses, Moss had no way of knowing the true figures that he should have reported to the IRS. And without making a good faith attempt to inquire into the truth or falsity of the information, one could find that Moss provided the false information himself or that he at least had constructive knowledge about how the returns contained material falsities.

---

[8] Myrick's testimony corresponds with counts 1.H and 9 of the indictment. Myrick's last name was "Harvey" when the Government filed the indictment.

*See United States v. Poole*, 640 F.3d 114, 121–22 (4th Cir. 2011) ("... in a criminal tax prosecution, when the evidence supports an inference that a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point to such liability, the trier of fact may find that the defendant exhibited 'willful blindness' satisfying the scienter requirement of knowledge") (citing *United States v. Anthony*, 545 F.3d 60, 64 (1st Cir. 2008); *United States v. Wisenbaker*, 14 F.3d 1022, 1027 (5th Cir. 1994); *United States v. Hauert*, 40 F.3d 197, 203 n.7 (7th Cir. 1994); *United States v. Bussey*, 942 F.2d 1241, 1246 (8th Cir. 1991)).

Moss also claims that he could not have done anything more than what he did to guard against fraud. This contention lacks merit. At a bare minimum, Moss could have asked the taxpayers questions about their earnings, verified that they had businesses, explained the contents of their completed tax returns and the affidavits they signed, or conformed to customary tax preparation practices.[9] The evidence suggests he did none of these things.

At bottom, the Government put forward ample evidence of knowledge and willfulness to sustain a conviction on the counts related to the returns of Givhan, Reeves, Smith, Myrick, and Boyd. As for the counts in which another Flash Tax preparer filed the return, the *Pinkerton* doctrine makes Moss liable for any of his co-conspirators'

---

[9] Testimony at trial established that Flash Tax preparers took about ten to fifteen minutes to prepare a return. Conversely, testimony about the business practices at other tax preparation outfits suggested that it takes at least thirty minutes to fill out a form properly and inform the customer about the contents.

actions that furthered the conspiracy, *see Mothersill*, 87 F.3d at 1218, including submitting false tax returns without Moss's direct involvement. The Government produced substantial evidence showing that Moss trained his co-conspirators to file false returns and that the co-conspirators did just that. This suffices to sustain the convictions on the counts in which a co-conspirator prepared the false return.

The counts related to Tomeka Boggan[10] present more of a problem. Boggan testified that she too had her tax returns filled out at Flash Tax. The Government, like it did with a number of other witnesses, elicited from Boggan that the preparer identification number on her return matched James Moss's identification number. On direct examination, Boggan said she babysat during 2006, making about $150 per week. Yet her return showed that she made $9,600 dollars that year, about $2,000 above what someone would earn in a year at a $150-per-week clip. Boggan further testified that her preparer spent little time going over the return with her and failed to explain the numbers he put down on the form.

On cross-examination, however, Moss's attorney had Boggan clarify that she reviewed her tax return and that she had no problem with the numbers put down on the form. Boggan testified she reviewed and understood the affidavit given to her by Moss before signing it, had no problem with the numbers used when she reviewed the documents on her own later that day, and told IRS Agent Wilson that the information on

---

[10] Boggan's testimony relates to counts 1.B and 3 of the indictment.

her form was correct and mirrored the information that she gave to Moss at Flash Tax.

Boggan's direct examination testimony hopelessly contradicts her testimony on cross-examination. Her direct testimony, on the one hand, establishes the necessary elements to convict Moss of aiding and abetting the filing of a false tax return. On the other hand, her cross-examination testimony suggests that her return correctly stated her earnings, which, if true, means that Moss did not aid her in the preparation of a *false* tax return. Since the Court has to look at the evidence in the light most favorable to the Government and make all credibility choices in favor of the verdict, it must credit Boggan's direct examination testimony, which clearly supports the guilty verdict.

For the reasons discussed above, Moss's motion for a judgment of acquittal is therefore denied on all counts.

### III. MOSS'S MOTION FOR A NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Unlike a Rule 29 motion, the Court "need not view the evidence in the light most favorable to the verdict." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). Nor does the Court have to refrain from considering the credibility of witnesses. *Id.* Even so, "the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id*. at 1312. The evidence must instead weigh heavily against the verdict "such that it would be a miscarriage of justice to let the verdict stand."

*Id.* at 1312–13. What is more, motions for new trial are disfavored: courts should only "grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.* at 1313. (citing *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979); *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980)).

    The Court is mostly satisfied that the trial produced sufficient evidence to sustain Moss's convictions. As discussed above, the Government put forth an overwhelming amount of evidence on the key elements of both the conspiracy and substantive counts, save for those related to Tomeka Boggan's tax return. And although Eddie Warren contradicted the testimony of the former Flash Tax employees who testified, the jury's decision to credit the former employees' testimony over Warren's does not amount to a miscarriage of justice. In fact, it is the type of difficult decision that our system of justice routinely relies on juries to make with minimal post-verdict supervision by the trial court. The same can be said about the jury's decision to discount Moss's interactions with Chris Weller, the most significant of which took place after the fraud occurred and when Moss had the greatest incentive to cover his tracks.

    Tomeka Boggan's contradictory testimony, however, requires the Court, in the interest of justice, to set aside Moss's conviction on the related counts. Boggan explicitly stated on cross that she gave true information to Moss, which he then entered on her return. This later-in-time testimony negates her initial claim that Moss prepared a false

return on her behalf. The Government, moreover, failed to clean up her initial statements on redirect, which leaves her unclarified testimony about the truth of the return as the last word on the matter. The evidence consequently fails to support a finding beyond a reasonable doubt that Boggan's tax return contained a false statement, a required element for a conviction under 26 U.S.C. § 7206(2). The Court therefore vacates the judgment against Moss on the related counts.

### IV. CONCLUSION

James Moss's Motion for Judgment of Acquittal and in the Alternative Motion for a New Trial (Doc. # 160) is GRANTED IN PART and DENIED IN PART as set forth below.

1. The motion is GRANTED as to Counts 1.B and 3 of the Indictment (Doc. # 1) and the judgment on those counts is hereby VACATED.

2. The motion is DENIED as to all remaining counts.

3. No later than **January 24, 2012** the Government shall notify the Court of its intent to proceed with a retrial against Defendant Moss on Counts 1.B and 3 of the Indictment *or* file a motion to dismiss counts 1.B and 3 of the indictment.

Done this the 13th day of December, 2011.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE